# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

LATESHIA PATILLO                                                                                    PLAINTIFF

v.                                              No. 4:16CV00722 JLH

SYSCO FOODS OF ARKANSAS, LLC                                                      DEFENDANT

## OPINION AND ORDER

Lateshia Patillo commenced this action against her former employer, Sysco Foods of Arkansas, LLC, on October 6, 2016, alleging race discrimination and retaliation in violation of Title VII. Patillo, who is black, alleges that she was constructively discharged because of her race and in retaliation for complaining about discriminatory actions. Sysco filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Patillo failed to exhaust her administrative remedies. Document #15. The Court granted the motion and entered a judgment dismissing the complaint on December 16, 2016, Patillo appealed, and the Eighth Circuit entered an order vacating the judgment and remanding the action for further proceedings on December 6, 2017. Documents #23, #25, and #28. Patillo had filed a motion for appointment of counsel, which the Court then granted. Document #31. The Court directed Sysco to file a brief addressing the issues on remand on or before February 14, 2018, and directed Patillo to file a brief in response on or before February 28, 2018. *Id.* The Court then stayed the action pending entry of an order by the bankruptcy court authorizing Patillo to proceed and approving retention of counsel; Patillo filed a notice of the bankruptcy court's authorization and approval on April 20, 2018, and the Court lifted the stay. Document #36.

Sysco and Patillo have filed briefs addressing the issues on remand and Patillo has filed a motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

Documents #32, #38, and #39. Sysco has responded, maintaining that amendment would be futile because Patillo's claims are not timely and even if they were, the proposed amended complaint fails to state a claim. Document #40. Patillo's motion for leave to amend the complaint is denied. Sysco's motion to dismiss is again granted.

I.

Rule 15(a)(2) provides that once the time to amend a pleading as a matter of course has expired, "a party many amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires," but may deny leave if there is a compelling reason, such as undue delay, bad faith, dilatory motive, or futility of the amendment. *See Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 605 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The Court accepts as true all of the factual allegations

contained in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

Patillo seeks leave to amend so she can correctly name Sysco as a defendant, add a new defendant, and add claims for race discrimination and retaliation under 42 U.S.C. § 1981 and the Arkansas Civil Rights Act, and add claims for interference with her rights under the Family Medical Leave Act. Document #39 at 3, ¶ 6. Regarding Patillo's Title VII claims, she says that if the Court grants her leave to amend, then the motion to dismiss will be rendered moot because the amended complaint cures the deficiencies in the original complaint and raises additional claims that do not have exhaustion requirements. Document #38 at 1, n. 1.

## II.

As a threshold matter, Sysco argues that the Court should exercise its discretion and hold that Patillo's claims are barred by judicial estoppel because she did not disclose them in the bankruptcy proceeding. Document #40 at 3-9. Patillo filed for bankruptcy on June 23, 2016. Chapter 13 Voluntary Petition at 1, *In re Patillo*, No. 4:16BK13311 (Bankr. E.D. Ark. June 23, 2016). She did not disclose any potential claim that she may have had against Sysco. *See id.* Patillo filed this action on October 6, 2016. Document #2. She did not disclose it until February 12, 2018, when she amended her schedules to reflect the ongoing lawsuit. Amended Schedules/Statements, *In re Patillo*, No. 4:16BK13311 (Bankr. E.D. Ark. Feb. 12, 2018).

"Judicial estoppel is an equitable doctrine that 'protects the integrity of the judicial process.'" *Combs v. Cordish Co., Inc.*, 862 F.3d 671, 678 (8th Cir. 2017) (quoting *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1046-47 (8th Cir. 2006)). It prevents a party from taking a position in a legal proceeding, continuing that position, and then assuming a conflicting position "simply because [her] interests have changed." *New Hampshire v. Maine*, 532 U.S. 742, 748, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001). The Court considers three factors, known as the *New Hampshire* factors, in determining whether a party should be estopped from asserting a claim: "(1) whether the party's later position is 'clearly inconsistent' with its prior position; (2) whether a court was persuaded to accept a prior position 'so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party claiming inconsistent positions 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped.'" *Smith v. AS Am., Inc.*, 829 F.3d 616, 624 (8th Cir. 2016) (quoting *New Hampshire*, 532 U.S. at 750, 121 S. Ct. 1808). These factors are not "an exhaustive formula" and are intended to aid the Court in exercising its discretion. *Stallings*, 447 F.3d at 1047. "In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Id.*; *see also Combs*, 862 F.3d at 679 ("[I]f a debtor obtains property during the pendency of a Chapter 13 bankruptcy, the debtor may be required to amend the Chapter 13 schedules.").

Even if the *New Hampshire* factors favor the application of judicial estoppel, it is an extraordinary remedy and the Court should only apply it "when a party's inconsistent behavior will result in a miscarriage of justice." *Stallings*, 447 F.3d at 1049. Patillo filed for bankruptcy prior to

commencing this lawsuit; she represented herself *pro se*; the Court dismissed the action with prejudice just three months after its commencement; she appealed just a few days after the Court's order of dismissal; she represented herself *pro se* on appeal; the action was pending on appeal for one year; and she prevailed on appeal. Allowing Patillo to proceed in this case will not result in a miscarriage of justice. Patillo has done nothing during the course of this litigation to indicate that she is gaming the system or that she chose not to disclose this action as a tactical decision. Patillo has now amended her schedules and the bankruptcy court granted her permission to retain counsel in this action. Judicial estoppel is not appropriate in this case.

## III.

The Eighth Circuit remanded to this Court for further consideration, in light of Supreme Court precedent, as to whether Patillo has satisfied Title VII's administrative requirements. *Patillo v. Sysco Foods of Ark., LLC*, 704 Fed. Appx. 612, 612-13 (8th Cir. 2017); Document #28; Document #23. "To exhaust administrative remedies, an individual must: (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and (2) receive notice of the right to sue." *Rush v. State of Ark. DWS*, 876 F.3d 1123, 1125 (8th Cir. 2017). A charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred and a civil action be brought by the complaining party within 90 days after the EEOC gives notice of the right to sue. 42 U.S.C. § 2000e-5(e)(1), (f)(1). The charge must "be in writing under oath or affirmation . . . contain[ing] such information and . . . in such form as the Commission requires." *Id*. at 2000e-5(b).

Patillo has filed two charges of discrimination with the EEOC. In 2015, she filed a charge alleging race and sex discrimination and retaliation. The EEOC issued a notice of the right to sue on September 8, 2015, but Patillo did not file suit. Document #20-2. She continued working for

5

Sysco until October 20, 2015, when, according to her, Sysco forced her to resign because of her race and in retaliation for filing the 2015 charge. Document #20-3. Then, on March 21, 2016, Patillo filed an unverified intake questionnaire with the EEOC alleging instances of race discrimination and retaliation, some that had occurred since the 2015 charge. Document #18 at 11-14. The EEOC responded on April 11, 2016, requesting that Patillo provide them with more information. Document #19 at 9. The EEOC informed Patillo that if she did not respond within 30 days, it would assume she did not wish to pursue her claims and labeled its correspondence: "Sysco Food Services of AR EEOC No. 493-2016-00978." *Id*. Patillo filed a second charge of discrimination with the EEOC on June 13, 2016. Document #20-3. The second charge is labeled Charge No. 493-2016-00978. *Id*. The EEOC issued a notice of the right to sue on July 8, 2016. Document #2 at 4. Patillo filed the second EEOC charge more than 180 days after the last alleged unlawful employment practice—constructive discharge—occurred. *Id*. at 1-3. But Patillo filed the questionnaire with the EEOC on March 21, 2016, which was within 180 days of the alleged unlawful employment practice.

Whether Patillo's action is timely depends on whether the unverified intake questionnaire can be deemed a charge for the purposes of calculating the 180 day cut-off for filing a charge. Document #28. The Eighth Circuit directed the Court to reconsider this question in light of *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) and *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 122 S. Ct. 1145 (2002). Document #28.[1] Prior to those opinions, the Eighth Circuit consistently held that intake questionnaires which are neither verified nor signed

---

[1] Sysco argues that Patillo has failed to prove that the EEOC in fact received the questionnaire. Document #32 at 6. There is nothing in the pleadings to indicate that the EEOC did not receive the questionnaire. At this stage in the litigation, the Court draws reasonable inferences in Patillo's favor.

6

under oath cannot be considered charges under Title VII for purposes of satisfying the requirement that a charge be filed within 180 days of the alleged unlawful employment practice. *Shempert v. Harwick Chem. Corp.*, 151 F.3d 793, 796 (8th Cir. 1998) (collecting cases). This holding does not align with *Edelman* and *Holowecki*. *See Wilkes v. Nucor-Yamato Steel Co.*, No. 3:14CV00224, 2015 WL 5725771 at *7 (E.D. Ark. Sept. 29, 2015).

In *Edelmen*, the plaintiff sent the EEOC a letter accusing his employer of discrimination, but he failed to verify the letter. 535 U.S. at 109, 122 S.Ct. 1145. He later, however, filed an untimely but verified formal EEOC charge. *Id*. at 109-10, 122 S.Ct. 1145. The Court agreed with the EEOC's regulation providing that a later, verified charge would relate back to the date on which the original letter was filed. *Id*. at 118, 122 S.Ct. 1145. Therefore, Title VII permits "the relation back of an oath omitted from an original filing" because an unverified, unsworn filing can still constitute a charge under Title VII if the defect is later cured. *Id*. at 115, 112 S. Ct. at 1150.

Patillo's March 21, 2016 intake questionnaire does not satisfy the requirements of 42 U.S.C. § 2000e-5(b) because it is not verified. Document #18 at 14. The June 13, 2016 charge of discrimination, however, is sworn under oath and cures those deficiencies. Document #20-3. Therefore, the fact that the intake questionnaire is not verified does not preclude it from being considered a charge for determining whether Patillo has satisfied Title VII's verification requirement. The question is whether the intake questionnaire can be relied upon to avoid the time-bar.

To decide whether Patillo's intake questionnaire can be deemed a charge for the purpose of satisfying Title VII's timely filing requirement, the Court looks to *Holowecki* and whether it applies in the context of Title VII. In *Holowecki*, the Supreme Court considered what constitutes a charge under the Age Discrimination in Employment Act ("ADEA"). 552 U.S. at 395, 128 S. Ct. at 1153.

The immediate question before the Court was the timeliness of the suit. *Id.* Like Title VII, the ADEA does not define "charge." *Id.* at 395, 128 S. Ct. at 1154. Recognizing that in order to operate efficiently the EEOC needed to be able to separate information requests from enforcement requests, the Court said:

> In addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.
>
> * * *
>
> [T]he filing must be examined from the standpoint of an objective observer to determine whether, by reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial process . . . .

*Id.* at 402, 128 S. Ct. at 1157-58.

The Court then turned to the filing at issue, an intake questionnaire. *Id.* at 404, 128 S. Ct. at 1159. The questionnaire contained the names, addresses, and telephone numbers of the employee and employer; an allegation that the employee and others were victims of age discrimination; the number of employees who worked at the facility; and a statement that the employee had not sought the assistance of any government agency regarding the allegations. *Id.* It did not include a request for the agency to act and the design of the form at that time did not give rise to such an inference. *Id.* at 405, 128 S. Ct. at 1150. However, the employee supplemented the intake questionnaire with a detailed six-page affidavit, asking the agency to compel the employer to stop discriminating against its employees based on age. *Id.*, 128 S. Ct. at 1150-60. The Court said the employee's statements in the affidavit were "properly construed as a request for the agency to act" and held that the questionnaire constituted a charge. *Id.*

Recognizing that its holding may apply outside the ADEA, the Court specifically warned against such application without careful consideration, "even if the EEOC forms and the same

8

definition of charge apply in more than one type of discrimination case." *Id.* at 395, 128 S. Ct. at 1153. Still, based on the similarities between the Title VII and ADEA exhaustion requirements, *Holowecki* applies here to assess the timeliness of a charge in Title VII cases. *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 n. 2 (6th Cir. 2011) (collecting cases); *Semsroth v. City of Wichita*, 304 Fed. Appx. 707, 712-13 (10th Cir. 2008); *Kennedy v. Columbus Mfg., Inc.*, 2017 WL 4680079 at *3 (N.D. Cal. Oct. 18, 2017) (collecting cases); *Bland v. Fairfax Cnty. Va.*, 799 F. Supp. 2d 609, 616-17 (E.D. Va. 2011); *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 86 (D.D.C. 2008).

The ADEA regulation providing the information that a filing must contain to be deemed a charge is nearly identical to its Title VII counterpart. *Compare* 29 C.F.R. § 1626.8, *with* 29 C.F.R. § 1601.12. The only significant difference between the two "[a]s it pertains to the form and substance of a charge . . . is that the ADEA lacks a verification requirement." *Wilkes*, 2015 WL 5725771 at *7 (*comparing* 42 U.S.C. § 2000e-5, *and* 29 C.F.R. §§ 1601.9, 1601.12, *with* 29 U.S.C. § 626, *and* 29 C.F.R. §§ 1626.6, 1626.8). And, "[t]he ADEA, like Title VII, sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Holowecki*, 552 U.S. at 402, 128 S. Ct. at 1158 (internal quotation omitted). Based on this comparison, the Supreme Court in *Holowecki* concluded that it is "consistent with the purposes of the [ADEA] that a charge can be a form, easy to complete, or an informal document, easy to draft." *Id*.

In light of *Holowecki*, Patillo's intake questionnaire qualifies as an EEOC charge for timeliness purposes. First, the intake questionnaire includes all the information listed in the regulation and in *Holowecki*: it is fully complete, identifies the parties, provides dates of events, and includes descriptions of discriminatory acts and adverse employment actions. *See* 522 U.S. at 402, 128 S. Ct. at 1158; 29 C.F.R. § 1601.7. Second, the questionnaire can be reasonably construed as

9

a request for the agency to take remedial action. Since *Holowecki*, the EEOC has modified its form intake questionnaire to make it easier for it to distinguish between requests for information and requests for enforcement.[2] *See Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112-13 (3rd Cir. 2014). It added two boxes to the end of the form. An employee checks box one if she wants to talk to an EEOC employee before deciding whether to file a charge. An employee checks box two if she wants to file a charge of discrimination and authorize the EEOC to look into the allegations included in the questionnaire. Above the boxes, the form states: "If you want to file a charge, you should check Box 2." Patillo checked box two. Furthermore, the EEOC labeled the dispute with a series of numbers in its letter responding to the questionnaire; it corresponds with the numbers listed on the subsequently filed formal charge. Document #18 at 9. The questionnaire can be reasonably construed as a request for the EEOC to take remedial action to protect her rights. *See Hildebrand*, 757 F.3d at 112-13 ("Under the revised form, an employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination."); *Kennedy*, 2017 WL 4680079 at *3; *Henderson v. Bank of America, N.A.*, No. 2:14-cv-895, 2015 WL 2374519 at *2 (E.D. Tex. May 15, 2015).

Because EEOC regulations allow an employee to amend a charge of discrimination to cure technical defects, "including failure to verify the charge," and provide that "[s]uch amendments . . . will relate back to the date the charge was first received," Patillo's verified June 13, 2016 charge relates back to the filing date of the unverified March 21, 2016, intake questionnaire. 29 C.F.R. § 1601.12(b); *see also*, 535 U.S. at 115, 122 S.Ct. at 145.

---

[2] Patillo's intake questionnaire is a form dated 9/20/08. Document #18 at 14. *Holowecki* was decided on February 27, 2008.

**IV.**

That the intake questionnaire is deemed a charge under *Holowecki* and that the verification of the formal charge relates back to the questionnaire for timing purposes does not end the Court's inquiry into whether Patillo exhausted her administrative remedies. To do so, Patillo must have given timely notice of all claims of discrimination in the EEOC charge. *See Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). The Court has addressed the timeliness issue in part. What remains is whether each claim alleged in this action has been exhausted and if so, whether those claims were exhausted in a timely fashion.

As discussed, 42 U.S.C. § 2000e-5(e)(1) provides that a charge shall be filed within one hundred and eighty days after *the alleged unlawful employment practice* occurred and notice of the charge (including the date, place and circumstances of *the alleged unlawful employment practice*) shall be served upon the person against whom such charge is made within ten days thereafter. "The object of the exhaustion requirement is 'the alleged unlawful employment practice.'" *Richter*, 686 F.3d at 851. The Supreme Court has explained that the term "practice" does not "connote 'an ongoing violation that can endure or recur over a period of time.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed 2d 106 (2002)). The Court determined that the term "practice" does not "convert 'related discrete acts into a single unlawful practice for the purposes of timely filing.'" *Id.* Instead, "'[e]ach discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)). The charge, therefore, must be filed within the 180 day time period after each discrete discriminatory act occurred. *See Rebouche v. Deere & Co.*, 786 F.3d 1083, 1086 (8th Cir. 2015).

The Eighth Circuit recognizes a judicial exception to the exhaustion doctrine: "In the Title VII context, [even if a claim is not listed in the charge,] '[t]he exhaustion requirement may be satisfied if the civil claim grows out of or is like or reasonably related to the substance of the allegations in the administrative charge.'" *Foster v. BNSF Railway Co.*, 866 F.3d 962, 966 (8th Cir. 2017) (quoting *Fanning v. Potter*, 614 F.3d 845, 51 (8th Cir. 2010) (internal quotation omitted)); *Jones v. City of St. Louis, Mo.*, 825 F.3d 476, 482 (8th Cir. 2016). The permissible scope of a civil suit should be "as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart*, 217 F.3d at 630-31.

Sysco argues that even if the questionnaire is deemed part of the administrative charge for timeliness purposes, it should not be deemed part of the administrative charge for deciding whether specific claims alleged in the complaint have been exhausted. Document #32 at 12. In other words, a claim raised in the intake questionnaire but omitted from the formal EEOC charge has not been exhausted. Patillo, relying on *Holowecki*, argues that the permissible scope of this action includes claims that appear in the intake questionnaire but are absent from the formal charge. Document #38 at 11 ("Liberal interpretation shows that all claims asserted in Plaintiff's complaint grew out of or are reasonably related to the substance of the allegations in her intake questionnaire."). The Eighth Circuit has not decided this issue. *See Wilkes*, 2015 WL 5725771 at *7.

It appears that only the Sixth Circuit has applied *Holowecki* to determine that claims are exhausted when mentioned in an intake questionnaire or other filing submitted to the EEOC prior to a formal charge. *See Williams*, 643 F.3d at 508. The majority of courts that have decided the issue limit *Holowecki's* application to whether a charge was timely filed. *See Swearinigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 865 (7th Cir. 2010) (overruled on other grounds) (deciding that *Holowecki* was "inapposite" because "the issue [was] not whether a charge was timely filed (it

12

was) but rather whether it included an allegation of retaliation"); *Barzanty v. Verizon PA., Inc.*, 361 Fed. Appx. 411, 415 (3d Cir. 2010); *Rashid v. Wash. Metro. Area Transit Auth.*, Civ. Action No. DKC 17-0726, 2018 WL 1425978 at *5 (D. Md. Mar. 22, 2018); *Lindsey v. Ricoh USA, Inc.*, Civil No. 2:17-cv-464, 2018 WL 1937062 (E.D. Va. Apr. 24, 2018); *Ahujaj v. Detica, Inc.*, 873 F. Supp. 2d 221, 228-29 (D.D.C. 2012); *Middleton v. Motley Rice, LLC*, No. 2:08–3256–CWH, 2010 WL 3167360, at *6 (D.S.C. Aug. 9, 2010) aff'd, 445 Fed. Appx. 651 (4th Cir. 2011), *cert. denied*, — U.S. —, 132 S. Ct. 1755, 182 L. Ed. 2d 542 (2012).

Regardless, Patillo's Title VII claims alleged in the proposed amended complaint are not based on allegations that were included in the intake questionnaire but omitted from the 2016 charge. Therefore, the Court need not decide whether *Holowecki* applies to the issue of whether claims have been exhausted.

V.

Considering *Holowecki* and the Supreme Court's interpretation of "unlawful employment practice," the Court turns to the proposed amended complaint to determine whether Patillo has complied with the administrative requirements applicable to her Title VII claims. Regarding the Title VII claims, Patillo says that if the Court grants her leave to amend, then the motion to dismiss will be rendered moot because the amended complaint cures the deficiencies in the original complaint. Document #38 at 1, n. 1. Patillo alleges that she was discriminated against based on her race and retaliated against in violation of Title VII. *Id*. at 2. The following discriminatory conduct is alleged in the amended complaint in support of Patillo's Title VII claims: Sysco passed over Patillo for promotions, selecting white candidates instead; Patillo made an internal complaint in March 2015 about Sysco's discriminatory and retaliatory conduct; her hours were reduced in May 2015; Patillo filed a charge with the EEOC in September 2015; she was then overloaded with

responsibilities and provided an unqualified assistant; Sysco treated Patillo this way so that she would quit; Patillo's working conditions became so intolerable that she was forced to resign on October 20, 2015. *See* Document #39-1 at 3-6, ¶ 12-32. In the 2016 charge, Patillo checked the boxes for discrimination based on race and retaliation. Document #32-3. Patillo stated: "I believe my hours were reduced [in May 2015], I was given an unqualified assistant, and I was forced to resign [in October 2015] because of my race, black, and in retaliation for filing a previous EEOC charge (493-2015-01399), in violation of Title VII." *Id*.

Patillo does not mention Sysco's failures to award her a promotion in the 2016 charge, but they are reasonably related to the allegations in that charge so the issue is timeliness rather than exhaustion. Document #32-3. The 2015 charge is based on allegations that Patillo was denied promotions on September 29, 2014, December 16, 2014, and March 15, 2015, because of her race. Document #32-1. Patillo did not file a civil action based on the 2015 charge and corresponding notice of the right to sue but she raises the allegations in the proposed amended complaint. Any Title VII claim based on these discrete, discriminatory acts is time-barred because Patillo did not file suit within 90 days of receiving from the EEOC a notice of the right to sue in September 2015. *See* 42 U.S.C. § 2000e-5(f)(1); *see Hales v. Casey's Mktg. Co.*, 886 F.3d 730, 736 (8th Cir. 2018); *see also Morgan*, 536 at 114, 122 S. Ct. 2061 ("Discrete acts such as . . . failure to promote . . ." are "not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Frazier v. Vilsack*, 419 Fed. Appx. 686, 690 (8th Cir. 2011) ("An employee who fails to bring a complaint in federal court following receipt of a right to sue letter within the time period allowed under Title VII is barred from ever bringing a federal claim related to that EEOC charge even if a subsequent EEOC charge and right to sue letter reference the earlier acts.").

Patillo's retaliation claim is based on two allegations of discriminatory conduct: (1) Sysco retaliated against her for complaining internally about discrimination in March 2015 by reducing her hours and (2) Sysco retaliated against her for filing a charge with the EEOC in September 2015 by reducing her hours and making conditions so intolerable that she was forced to resign.[3] *See* Document #39-1 at 9, ¶ 50. The 2015 charge, the 2016 charge, and the proposed amended complaint allege that "the reduced hours continued." *Id*. at 6, ¶ 29. Though Patillo continued to work the reduced amount of hours until her resignation, the reduction of hours does not constitute a "continuing violation." Rather, Sysco's decision to reduce the number of hours Patillo could work in a week was a discrete, allegedly discriminatory act. *See Morgan*, 536 U.S. at 113. Patillo alleges that the act occurred in retaliation for her internal complaints and the 2015 charge. The proposed amended complaint alleges that her hours were reduced in May 2015. Document #39-1 at 5, ¶ 25. There is no allegation that Sysco reduced Patillo's hours again after she filed the 2015 charge. Therefore, any retaliation claim based on a reduction in hours is time-barred.

In the 2016 charge and the proposed amended complaint, Patillo alleges claims for race discrimination, alleging constructive discharge, and retaliatory constructive discharge. Document #32-3 at 2; Document #39-1 at 8-9, ¶¶ 44, 52. Patillo has exhausted administrative remedies with respect constructive discharge. *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011). She filed an administrative charge with the EEOC alleging constructive discharge within 180 days of the constructive discharge, received a notice of the right to sue, and filed this action within 90 days of receiving notice of the right to sue.

---

[3] The proposed amended complaint also alleges that Sysco assigned Patillo an unqualified assistant, but this appears to be part of why conditions were so intolerable. Patillo does not appear to be arguing the assignment of an unqualified assistant is an adverse employment action.

**VI.**

The proposed amended complaint adds claims under 42 U.S.C. § 1981, the Family Medical Leave Act ("FMLA"), and the Arkansas Civil Rights Act ("ACRA"). Document #39-1 at 1, ¶ 1. Sysco argues that amendment would be futile, in part because the claims are barred by the relevant statutes of limitations. Document #40 at 16. The section 1981 and ACRA claims are based on the same unlawful employment practices as the Title VII claims; the constructive discharge claim likewise arises out of the same unlawful employment practices and Patillo's resignation is referenced in the original complaint. *See* Document #39-1 at 8-9, ¶¶ 36-58. Therefore, the proposed amendment relates back to the date of the original complaint because the amendment asserts claims that arose out of the conduct or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). The applicable statute of limitations for race discrimination and retaliation claims under 42 U.S.C. § 1981 is four years. *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004); *Jackson v. Homechoice, Inc.*, 368 F.3d 997, 999 (8th Cir. 2004). Section 1981 does not require the exhaustion of administrative remedies. *See Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 760 (8th Cir. 2004). Patillo filed this action on October 6, 2016, which is within four years of the discriminatory conduct alleged in the proposed amended complaint. Document #2. Therefore, the section 1981 claims are timely.

Patillo's ACRA claims are governed by Ark. Code Ann. § 16-123-107(c)(4), which provides that any action based on a violation of the right to obtain and hold employment without discrimination "shall be brought within one (1) year after the alleged employment discrimination occurred, or within (90) days of receipt of a "Right to Sue" letter" from the EEOC, whichever is later. Claims under the ACRA are analyzed in the same manner as Title VII claims and the ACRA instructs Arkansas courts to look to federal civil-rights all when interpreting its provisions. *See Holt*

*v. Deer-Mt. Judea Sch. Dist.*, 135 F. Supp. 3d 898, 904 (W.D. Ark. 2015). Therefore, the Court's analysis concerning the timeliness of Patillo's Title VII claims applies to her ACRA claims.

The FMLA claim is based on allegations that Sysco interfered with Patillo's rights under its provisions: Sysco refused to process Patillo's paperwork requesting FMLA leave, precluding her from taking leave and caring for her children. *See* Document #39-1 at 10, ¶ 55-60. An FMLA interference claim is governed by a two-year statute of limitations: "[A]n action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). The proposed amended complaint does not allege the date the interference occurred, but it does allege that Patillo complained on March 15, 2015, about her attempt to utilize intermittent FMLA leave, so the interference occurred prior to that date. Document #39-1 at 5, ¶ 23. Patillo commenced this action less than two years later. The question is whether the FMLA claims arises out of the conduct set out in the original complaint, thereby allowing the amendment to relate back to the date this action was filed.

"The basic inquiry is whether the amended complaint is related to the general fact situation alleged in the original pleading." *Alpern v. UtiliCorp. United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996). The original complaint did not mention leave or the fact that Patillo's children required care; it focused on race discrimination and retaliation. *See* Document #2. Patillo's FMLA claim relates to the general fact situation alleged in her original complaint only in the most general way—both relate to her employment at Sysco—but that is too general for the FMLA claim to relate back. Patillo's FMLA claim is barred by the statute of limitations. *Cf. Maegdlin v. Int'l Assoc. of Machinists*, 309 F.3d 1051, 1053 (8th Cir. 2002).

**VII.**

Finally, the Court looks to the proposed amended complaint first to determine if amendment would be futile. Patillo's claims for race discrimination and retaliation in violation of Title VII, section 1981, and the ACRA remain. The Eighth Circuit has addressed the pleading standard as it applies in the employment discrimination context. *See LaKeysia Wilson v. Ark. Dept. of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). The court explained that "[u]nder the 'simplified notice pleading standard' that governs *McDonnell Douglas* retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims." *Id*. The Eighth Circuit quoted the Supreme Court: "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." *Id*. (quoting *Johnson v. City of Shelby*, 135 S. Ct. 346, 347, 190 L.Ed. 2d 309 (2014) (per curiam)).

Patillo relies on constructive discharge as the adverse employment action for her race discrimination and retaliation claims. *See Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 418 (8th Cir. 2010) (acknowledging constructive discharge as an adverse employment action in a retaliation claim); *Tatum v. Berkley*, 408 F.3d 543, 551 (8th Cir. 2005) (recognizing constructive discharge as an adverse employment action in a race discrimination claim). The Court assumes that Patillo has stated a prima facie case of discrimination and retaliation, except for an adverse employment action. *See West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 497 (8th Cir. 1995 "Constructive discharge occurs when an employee deliberately renders the employee's working conditions intolerable, thereby forcing her to quit." *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005) (internal quotation omitted); s*ee also Penn. State Police v. Suders*, 542 U.S. 129,

142, 124 S. Ct. 2342, 2352, 159 L. Ed. 2d 204 (2004) (holding that Title VII encompasses employer liability for constructive discharge).

To prove her constructive discharge claim, Patillo would have to show that Sysco "deliberately created intolerable working conditions with the intention of forcing her to quit." *Sanders v. Lee Cnty. Sch. Dist. No. 1*, 669 F.3d 888, 893 (8th Cir. 2012) (internal quotation omitted). If "resignation was a reasonably foreseeable consequence of [an] employer's discriminatory actions," the intent requirement is satisfied. *Tatom v. Georgia-Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). The Eighth Circuit has explained that the intolerability of working conditions is judged by an objective standard: "[T]he question is whether the working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Id*.

The following facts are alleged in support of the constructive discharge claim: Patillo worked reduced hours but was "overloaded with responsibilities in coordinating customer shipments and pick-ups and was given unqualified assistance in helping complete these tasks. Defendant's conduct was intended to force Plaintiff to quit." Document #39-1 at 6, ¶ 29. The facts alleged in the proposed amended complaint indicate that Patillo's working conditions were frustrating: she did not advance at Sysco; instead, she was forced to do more work in less time without competent assistance. But frustration is not the standard. "[T]he overwhelming compulsion to quit that is necessary for constructive discharged is not created" when an employer reduces an employee's hours per week by five hours, assigns the employee more work, and assigns the employee an assistant to help with that work who the employee believes is "unqualified." *See Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 495 (8th Cir. 1996). Construing the complaint liberally, the allegations in the proposed amended complaint are insufficient to constitute a constructive discharge because

a reasonable person would not find the alleged working conditions to be intolerable. *See Tatom*, 228 F.3d at 931-32 (collecting cases); *Betz v. Chertoff*, 578 F.3d 929, 935 (8th Cir. 2009). Therefore, amendment would be futile.

## CONCLUSION

For the foregoing reasons, Lateshia Patillo's motion for leave to file an amended complaint is DENIED. Sysco Foods of Arkansas, LLC's motion to dismiss is again GRANTED. This action is hereby dismissed with prejudice.

IT IS SO ORDERED this 1st day of June, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE